IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHN RAY KING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-13-1260-M |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for benefits under the Social Security Act. This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). The Commissioner has answered and filed the administrative record (hereinafter TR. ____). The parties have briefed their positions, and the matter is now at issue. It is recommended that the Commissioner's decision be **REVERSED AND REMANDED for further administrative proceedings**.

### I.    Procedural Background

Plaintiff's applications for benefits were denied initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision.

(TR. 22-31). The Appeals Council denied Plaintiff's request for review. (TR. 4-6). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. The ALJ's Decision

The ALJ followed the sequential evaluation process required by agency regulations. See Fischer-Ross v. Barnhart, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since January 2, 2009, the alleged disability onset date. (TR. 25). At step two, the ALJ determined that Plaintiff has severe impairments as follows:

> Diabetes mellitus with neuropathy; hypertension with high triglyceride levels; obesity; a dysthymic disorder, moderate; and undifferentiated somatoform disorder; dependent and avoidant personality features; pain into the back and hip; and a history of arthritis of ankle.

(TR. 25). At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 25).

At the first phase of step four, the ALJ assessed Plaintiff's residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of light work… Specifically can lift and/or carry and push and/or pull twenty pounds occasionally, ten pounds frequently. He can stand and/or walk, with normal breaks, for a total of two hours in a workday. He can sit, with normal breaks, indefinitely. The claimant can crouch, stoop, kneel, crawl, and climb ramps or stairs occasionally. He cannot climb ladders, ropes, or scaffolds. He cannot work at unprotected

2

heights or around hazards. The claimant cannot use vibrating tools or equipment. He cannot work in temperature extremes. The claimant can perform simple and some detailed and complex work. He can work with the public face-to-face only occasionally.

(TR. 26).

At the second phase of step four, the ALJ related the exertional requirements of Plaintiff's past relevant work as a customer service representative. In the third phase of step four, the ALJ compared the requirements of Plaintiff's past relevant work to the previously formulated RFC and determined that Plaintiff is capable of performing his past relevant work. (TR. 31). Thus, at step four the ALJ determined that Plaintiff was not disabled.

### III.   Issues Presented

Plaintiff urges on appeal that the ALJ erred, as a matter of law, by failing to discuss uncontroverted and/or significantly probative evidence that conflicted with his findings; and by failing to properly evaluate the medical opinion evidence.

### IV.   Standard of Review

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

## V. The Medical Evidence

In June 2010, Plaintiff's treating physician, Ronald R. Hopkins, D.O., completed a Physical RFC Assessment in which he concluded that Plaintiff's diabetic neuropathy required that he recline for 30 minutes 4-5 times in an 8 hour workday; and that Plaintiff could sit for no more than 2 hours, and stand or walk for less than 10 minutes total at one time in an 8 hour workday. (TR. 250-251). Dr. Hopkins also concluded that Plaintiff could never lift or carry over 20 pounds, and could only occasionally lift or carry up to 10 pounds. (TR. 252). Treatment notes from June 2010 show that Dr. Hopkins assessed Plaintiff as having diabetic neuropathy, depression and hypertension; and that he had no pedal edema. (TR. 258).

In July 2010, Plaintiff underwent a consultative physical examination performed by Mark Carlson, D.O., who reported that Plaintiff had non-pitting edema in both ankles with a 50% decrease in hip flexion secondary to pain and obese abdomen; and that he had some sensory loss in his lower extremities. Dr. Carlson also reported that Plaintiff's heel and toe walking were normal as was the speed, safety and stability of his gait. Dr. Carlson further reported that Plaintiff's muscle strength maintaining shoulder abduction bilaterally was 5/5 as was his grip strength. (TR. 279). Dr. Carlson's assessment was of diabetic neuropathy with a history of gout. (TR. 280).

In August 2010, Plaintiff underwent a consultative psychological examination performed by Raymond M. Fuchs, Ph.D., who found that Plaintiff had no "organic

difficulties with understanding and memory, lack of drive and resulting lack of attenuation as a result of weariness and depressiveness." (TR. 287). Dr. Fuchs also found that Plaintiff's sustained concentration and persistence of a functional nature is somewhat affected by "lethargic lack of energy, drive, motivation and weariness." (TR. 287). Dr. Fuchs concluded that Plaintiff should be able to remember, comprehend and carry out simple to complex instructions if given appropriate support, directions and recognition for his efforts; and that his prognosis was poor. (TR. 287).

Non-examining medical consultant, Burnard Pearce, Ph.D., concluded in September 2010 that Plaintiff was moderately limited in his ability to understand, remember, and carry out detailed instructions, and in his ability to interact appropriately with the general public. Dr. Pearce also concluded that Plaintiff could perform simple and some complex tasks; that he could relate to others on a superficial work basis; and that he could adapt to a work situation. (TR. 307-309). Non-examining medical consultant, Carmen Bird, M.D., concluded in October 2010 that Plaintiff could occasionally lift 10 pounds and frequently lift less than 10 pounds; and that he could stand and/or walk (with normal breaks) for a total of at least 2 hours in an 9-hour workday, and sit (with normal breaks) for a total of about 6 hours in an 8-hour workday. Dr. Bird found that no other exertional, postural, manipulative, visual, communicative or environmental limitations were established. (TR. 312-318)

Durado D. Brooks. M.D. (internal medicine), testified at the administrative hearing as a medical expert (ME). (TR. 42-51). Dr. Brooks opined that Plaintiff is limited

5

to lifting and carrying 20 pounds occasionally and 10 pounds frequently, limited to standing and walking approximately two hours in an eight-hour workday, and sitting for up to six hours in an eight-hour workday. (TR. 44). Dr. Brooks also stated that Plaintiff's reported edema in his feet was "relatively mild" and that Plaintiff would not necessarily be required to elevate both feet, nor would he necessarily be absent from work more than twice a month. (TR. 50).

**VI.    Analysis**

Plaintiff argues this case "presents a classic example of the type of evidentiary discussion prohibited by *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) and *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004). Indeed, the ALJ has cobbled together pieces of evidence into a whole that defies meaningful judicial review.

Turning first to the opinions of Plaintiff's treating physician, Dr. Hopkins, which the ALJ gave "little weight." The ALJ's in giving "little weight" to the opinions appears to rely on the October 2010 assessment of the agency physician, Dr. Bird, which he, without explanation, gives both "great weight" and "some weight ", noting only that the testimony of the ME was "more specific." (TR. 30).

When presented with opinions of a treating physician, the ALJ must "give good reasons" in his decision for the weight assigned to the opinion. 20 C.F.R. § 404.1527(d)(2) *see also* SSR 96-2p; *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003). The decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and

the reasons for that weight." SSR 96-2p. In deciding how much weight to give a treating source opinion, an ALJ must first determine whether the opinion qualifies for "controlling weight." An ALJ should keep in mind that "it is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." SSR 96-2p; 20 C.F.R. § 404.1527(d)(2).

The Tenth Circuit described the required analysis of a treating physician's opinion in *Watkins v. Barnhart*, 350 F. 3d 1297, 1300-1301, (10th Cir. 2003):

> The analysis is sequential. An ALJ must first consider whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." SSR 96-2p, 1996 WL 374188, at *2 (quotations omitted). If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. *Id.* In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight. *Id.* The agency ruling contemplates that the ALJ will make a finding as to whether a treating source opinion is entitled to controlling weight.

The Court in *Watkins* further reasoned that

> Resolving the controlling weight issue does not end our review. In completing the analysis: adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions

7

> are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927,

*Watkins* at 1300; SSR 96-2p.

If an ALJ determines that a treating physician's opinion is not entitled to controlling weight then in order to disregard or give "slight weight" to that treating physician's opinion, he must set forth "specific, legitimate reasons" for doing so. *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984). In *Goatcher v. United States Dep't of Health & Human Services*, 52 F.3d 288 (10th Cir. 1995), the Tenth Circuit outlined factors which the ALJ must consider in determining the appropriate weight to give a medical opinion.

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 290; 20 C.F.R. § 404.1527(d)(2)-(6).

In his decision, the ALJ offered little in the way of analysis of the opinions of Dr. Hopkins. Instead, he offered the opinion of Dr. Bird who offered selected portions of the opinions of the consultative examiner, Dr. Carlson, to contradict Dr. Hopkins (TR. 30). The ALJ also posits that Dr. Hopkins "appears to use the claimant's self-serving statements as an advocate for the claimant's economic incentives. The claimant saw this physician

8

primarily for medication (most of which he does not take) and to monitor his blood pressure." (TR. 30).

The ALJ failed to engage in the required analysis. On remand, the ALJ should make it clear through the ALJ's own analysis, not that of a surrogate non-examining agency physician, the specific legitimate reasons he has for giving little weight to the opinions of Plaintiff's treating physician, Dr. Hopkins.

As to the balance of Plaintiff's contentions, given that remand is recommended, they will not be discussed in detail. However, the Commissioner should be mindful of the following: (1) The VE's response to a hypothetical which included "moderate" limitations contained in Plaintiff's mental RFC assessment, which was given "some weight" by the ALJ, yielded no jobs (TR. 307-308, 78-79, 25); (2) the ALJ's discussion of why he deemed Dr. Fuchs opinion "generally credible" is absent from the decision. (3) the ALJ consistently failed to discuss significantly probative evidence which he rejected.

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner should be **REVERSED AND REMANDED** for further proceedings consistent with this Report and Recommendation.

**NOTICE OF RIGHT TO OBJECT**

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. §636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **February 13, 2015**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

**STATUS OF REFERRAL**

This Report and Recommendation terminates the referral by the District Judge in this matter.

**ENTERED** on January 30, 2015.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE